446 So.2d 799 (1984)
STATE of Louisiana, Appellee,
v.
Gregory FULLER, Appellant.
No. 15643-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Writ Denied April 2, 1984.
*800 Norris & Placke by Allan L. Placke, West Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, FRED W. JONES and SEXTON, JJ.
SEXTON, Judge.
This defendant appeals his conviction for the offense of receiving stolen goods in an amount of $100 or more but less than $500.
The defendant was originally charged in the alternative with theft or receiving stolen goods as a result of a July 3, 1982 theft from the Razz Ma Tazz Arcade in Monroe, Louisiana. Subsequent to the trial and his conviction, as previously indicated, he was sentenced to two years at hard labor. This term was suspended and he was placed on three years supervised probation with the special condition that he make restitution in the amount of $200 to the arcade, pay attorney's fees to the indigent defender board, and pay court costs. On appeal he has filed three assignments of error.
In the first two assignments, the defendant complains that certain statements which he made subsequent to his arrest are inadmissible because, (a) the warrantless arrest at his mother's home was contrary to Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and (b) he contends that he was not afforded appropriate Miranda warnings prior to certain inculpatory statements admitted into evidence. Finally, the defendant asserts that his conviction was based on his statements without adequate independent proof of a corpus delicti.
The theft in question was discovered by the manager of the arcade as he was closing the premises for the evening. A sum of money had been in a locked cash drawer behind the counter. Immediately prior to the theft, which occurred shortly before closing, the defendant was seen sitting at the counter near the drawer.
After being reported to police, the fact of the theft and the description of the defendant was radioed to Officer Taylor who knew the defendant personally. The officer saw the defendant dressed as described by the radio dispatch entering an apartment building. When the officer knocked on the door, the defendant's mother answered and denied any knowledge of the defendant's presence. She consented to a search and it was then discovered that the *801 back door was open and that the defendant was not present.
The following evening Officer Taylor was once again dispatched to the same apartment pursuant to a call received at the police station from an unidentified person. Upon arriving at the residence, Officer Taylor found the door open and the defendant and his sister inside. After knocking, the defendant's sister invited the officer in. At this point, Taylor testified, he told the defendant that he was needed for questioning and advised the defendant of his rights.[1]
The defendant subsequently made four separate statements of essentially the same nature, all inculpating himself for the offense of receiving stolen things. He gave two statements to Officer Taylorone at the time of his arrest in the apartment and another just after booking. He also made inculpatory statements to Officers Brown and Walker under interrogation and to Officer Peel the day following his arrest.

ARREST OF THE DEFENDANT
The defendant initially contends that probable cause did not exist for his arrest, and that even if there was sufficient probable cause, the arrest constituted an illegal intrusion into a constitutionally protected area without a warrant or without exigent circumstances, citing Payton v. New York, supra and State v. Brown, 387 So.2d 567 (La.1980).
We are satisfied that probable cause existed for the defendant's arrest. The occurrence of a theft in close proximity to where the defendant was seated at a time approximating his presence there, together with his flight from an investigating officer within minutes of the discovery of the theft, furnish probable cause for his arrest.
It is apparent that Payton prohibits a warrantless and nonconsensual entry into a home in order to effect an arrest:
"... [t]he Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Payton, supra, at page 576. [Emphasis supplied.]
In this case it is undisputed that the defendant's sister consented to entry by the officers into the residence.
Furthermore, while Payton requires that police must have an arrest warrant under these circumstances, consent has long been a recognized exception to those circumstances where a search warrant is required. See State v. Dowling, 387 So.2d 1165 (La.1980), and State v. Jolla, 384 So.2d 370 (La.1980). Both arrest and search warrants are progeny of the Fourth and Fourteenth Amendments of the United States Constitution and are generally governed by the same rules. Therefore, a consensual entry to effect an arrest does not violate Payton.
State v. Brown, supra, also cited by the defense, is no broader than Payton, furnishing no additional requirements in this jurisdiction. Actually, the holding there was that the defendant's warrantless arrest was unconstitutional because officers lacked the necessary probable cause for a valid arrest. The court stated in dicta that had probable cause existed, the warrantless and nonconsensual entry into defendant's home would have nonetheless rendered the arrest illegal.
Therefore, the entry into this home by police officers at the consent of the defendant's sister, and the arrest of the defendant without a warrant, is not unconstitutional. It is authorized as a valid exception to the warrant requirement. Thus statements subsequent thereto are not precluded *802 on this basis. This assignment of error lacks merit.

MIRANDA WARNINGS
Secondly, the defendant next contends that his four statements were rendered without proper Miranda warnings.
Officer Taylor testified that the first statement given to him was made shortly after he confronted the defendant in his home. The defendant made a second statement to Officer Taylor at the station after booking. The defense contends that when Officer Taylor testified at the motion to suppress as to the Miranda warnings given by him at defendant's apartment, that he did not initially testify that he had advised the defendant of his right to a court appointed counsel if he could not afford one. The defense asserts that Officer Taylor's return to the stand to "fill in the blank" should be viewed with suspicion. However, upon returning to the stand, Officer Taylor explained that after initially testifying he himself realized that he had failed to indicate to the court that this particular part of the warning had in fact been rendered. He testified that he approached the assistant district attorney in this respect in order to correct the record.
Thus, it is apparent that the trial court could easily have concluded that all of the specific Miranda rights were indeed rendered to the defendant prior to his arrest. However, even if the warnings were not properly stated, the defendant's first two statements are admissible since it is uncontradicted that these statements were voluntarily given without prompting or questioning from the officer. State v. Smith, 407 So.2d 652 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980); State v. McPhate, 393 So.2d 718 (La.1981). The other two statements given to Officers Brown and Peel were clearly the result of interrogation. Officer Walker, who was present during the third statement, testified as to the full Miranda advice by Officer Brown and the voluntariness of this statement, all of which was confirmed by Officer Brown. Likewise, Officer Peel testified that on July 5, he advised the defendant of his full Miranda rights prior to questioning. Furthermore, the defendant conceded in his testimony at the motion to suppress that he was advised of his Miranda rights by Officer Brown.
Trial court determinations on the credibility and weight of testimony regarding voluntariness of confession are afforded great weight and are not overturned unless unsupported by the record. State v. Thibodeaux, 414 So.2d 366 (La.1982); State v. Jackson, 381 So.2d 485 (La.1980). The record fully supports the trial court's finding that the State carried its burden of proving that the statements of the defendant were made freely and voluntarily with the proper Miranda warnings. This assignment of error lacks merit.

CORPUS DELICTI
In the third and final assignment of error, the defendant argues that his conviction was based solely on his uncorroborated confessions without proof of the corpus delictii.e., without a showing that offense of receiving stolen goods actually occurred.
It is axiomatic that an accused cannot be convicted on his own uncorroborated confession without proof that a crime has been committedin other words, without proof of a corpus delicti. However, when the details of a proven corpus delicti are corroborated by a voluntary statement, the statement is admissible. State v. Reed, 420 So.2d 950 (La.1982); State v. Sellers, 292 So.2d 222 (La.1974).
The offense of receiving stolen goods contains four elements: (1) the intentional procuring, receiving, or concealing (2) of anything of value, (3) which has been the subject of any robbery or theft (4) under circumstances indicating the offender knew or had good reason to believe that the thing was the subject of a robbery or theft. State v. Walker, 350 So.2d 176 (La. 1977). The evidence in this case indicated that when the defendant was booked, $50 was taken from his person in denominations *803 of a ten and two twentiesthe denominations of the money stolen. The defense concedes the prosecution established that a theft had occurred.
In each of the defendant's four inculpatory statements he told officers he did not participate in the offense in question, though he witnessed the theft which was perpetrated by two white males who gave him $100 of the stolen money to remain silent. He stated one of the white males, who pried open the cash drawer and took the bank bag, was named Bobby. The defendant stated that he fled on foot after receiving the cash until he met two friends with whom he spent the night in a hotel room paid for by him. Thus the defense argues that, while the defendant admitted seeing the theft occur, his subsequent confession to receipt of items taken in that theft cannot sustain a conviction because the only evidence of the fact that the offense of receiving stolen goods occurred is the defendant's own confession.
We categorically reject this ingenious contention. We hold that where, as here, there is proof of the corpus delicti of a theft and the defendant is charged alternatively with theft or receiving stolen things, that sufficient proof of a corpus delicti exists to make admissible a voluntary confession to having received goods which were the subject of that theft. See State v. Reed, supra; State v. Freetime, 334 So.2d 207 (La.1976).
Accordingly, the conviction of the defendant is affirmed.
AFFIRMED.
NOTES
[1] Officer Taylor testified that the defendant was not under arrest and stated that the defendant voluntarily accompanied the officer to the station. However, during this process, the defendant was handcuffed, and upon arriving at the station he was booked and incarcerated. The State does not here seriously contest the fact that the defendant was arrested when confronted by Officer Taylor.