486 So.2d 879 (1986)
STATE of Louisiana
v.
James PENNY.
No. 85 KA 1245.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Writ Denied June 6, 1986.
*881 Bryan Bush, Dist. Atty., Baton Rouge by Doug Simmons, Asst. Dist. Atty., for plaintiff-appellee.
Robert Roux, Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
James Penny was charged by bill of information with one count of armed robbery, in violation of LSA-R.S. 14:64. He was tried by a jury, which convicted him as charged; and he was subsequently sentenced to a term of ninety-nine years at hard labor, without benefit of probation, parole or suspension of sentence. He has appealed, assigning thirty-one errors and briefing twenty-one in eight arguments. Assignments of error not briefed are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
Defendant and his companion, Kennedy Thompson, were charged with the armed robbery of Joseph Shaw, an elderly black male with whom Thompson was slightly acquainted. On the evening of January 27, 1983, the two men hid in the bushes near Shaw's home in Baton Rouge and awaited his arrival. When the victim returned, they ran from the bushes and Thompson began beating him about the head with an oak stick. After Shaw fell to the ground, defendant took his wallet and the two men made their escape. Approximately $3700.00 was taken in the robbery with the assailants sharing equally. Shaw was discovered in his yard some time later, suffering from the beating and exposure. He was treated by Emergency Medical Service personnel for hypothermia and bleeding, resulting from a fractured skull. After examination at Earl K. Long Hospital in Baton Rouge, he was transported to Charity Hospital in New Orleans where he remained in a coma for several days before dying as a result of the head injuries sustained in the robbery.
Defendant was arrested in his home after the police received information that he had been involved in an armed robbery of a local bar, the Cedar Rose Lounge. Prior to defendant's arrest, the police also received word that he had been involved in the Shaw incident. After the arrest, defendant was transported to the police station and approximately three hours later, after being informed that Shaw had died from the injuries sustained during the robbery, gave a taped confession in which he admitted participating in the robbery but denied inflicting the injuries which caused the victim's death.

ADMISSION OF DYING DECLARATION AND EVIDENCE OF THE VICTIM'S INJURIES

Assignments of Error Numbers 5, 6, 7, 8, 9, 10, 13, 14
Defendant argues the court erred in permitting the state to introduce medical evidence regarding the death of Joseph Shaw and evidence of his dying declaration to the Emergency Medical Services technician who first treated the victim. He argues that the medical evidence was admitted only for its inflammatory, prejudicial impact and was of only slight probative value. He also argues that evidence of Shaw's death had such an impact upon the jurors they would be unable to fairly determine his guilt or innocence on the charge of armed robbery.
In its opening statement, the prosecution, over defendant's objection, advised the jury that the victim of this offense died as a result of the injuries he sustained in the robbery. Thereafter, in order to establish the foundation for the admission of Shaw's last words, the state presented the medical records, hospital reports, testimony of the doctor who performed the autopsy *882 and the autopsy report, all of which indicated the victim was near death after the attack. The physician who performed the autopsy described the injuries suffered by the decedent. The doctor examined an oak stick supplied by the state and testified the injuries could have been inflicted by a weapon similar to it.[1]
The state presented the testimony of Donald Breland, the ambulance attendant dispatched to the victim's home, who testified that the victim momentarily regained consciousness on the way to the hospital and stated, "Them god damn niggers took my money."
Defendant submits Shaw's statement was admitted without a showing that the declarant was aware or believed that his death was imminent; therefore, the statement was not admissible as a dying declaration and should have been excluded as hearsay.[2]
A statement is admissible as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise. State v. Verrett, 419 So.2d 455 (La.1982). However, the necessary state of mind may be inferred from the facts and circumstances surrounding the making of the declaration and the victim need not express this belief in direct terms. Id. The Louisiana Supreme Court, in Verrett, quoted the standard previously set forth in State v. Augustus, 129 La.617, 56 So. 551 (1911), in pertinent part as follows:
... [W]hile no absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature mortal, and when, as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.
419 So.2d at 456. The court concluded that it is not sacramental that the victim declare that he feels the end is near if such belief may be reasonably presumed from the facts and circumstances surrounding the declaration.
We believe the trial court correctly determined that the declaration of the victim was admissible because a sufficient showing had been made from which the court could infer that the victim felt his death was near. The victim, an elderly man, was hit in the head several times, at least once so hard that his skull was driven toward his brain, tearing that organ. Because of these injuries, he was unable to move and remained on the ground for at least half an hour on a cold, rainy night in January. When first examined by Emergency Medical Services personnel, the victim's body temperature had dropped significantly. The medical reports established that the blows to his head caused massive bleeding under his skull and that emergency surgery was required to drain the blood which had accumulated there. Despite the surgical procedures performed and hospital care rendered, the victim died as a result of these injuries. We find the magnitude of the injuries, the circumstances surrounding the declaration, and the victim's death establish an inferential basis for finding that the victim was in fact, and believed himself to be, near death.
Defendant's argument that the evidence of the victim's condition in the ambulance was irrelevant is likewise without merit. The fact that the victim became *883 comatose after making his statement is relevant to the examination of the circumstances required by Verrett. We find that the court did not err in finding the foundation requirements were met and that the admission of the medical evidence was necessary to establish this foundation.
Defendant further argues, however, that evidence of the victim's injuries and untimely death prejudiced the jurors to the extent that they could not impartially judge his guilt of the crime for which he was charged.
All evidence is subject to constitutional guarantees of due process and a fair trial before an impartial jury. The right to a fair trial requires that, even though evidence may be deemed relevant because it has probative value, counterbalancing factors may exist which lead a court to exclude this otherwise relevant evidence if the probative value is outweighed. Among the factors to be considered are: the danger that the evidence may unduly arouse the jury's emotions of prejudice, hostility or sympathy; the probability that the evidence may create a collateral issue which will unduly distract the jury from the main issue; delay in the trial; and the danger of unfair surprise. State v. Brown, 428 So.2d 438 (La.1983).
We do not find the evidence presented to be excludable on this basis. Rather, its admission was required not just as foundation evidence for the victim's dying declaration, but was also critical to the issue of whether defendant was armed during the commission of the robbery. Although a stick may appear innocuous, the severe injuries inflicted upon the victim established that, in the manner used, it was calculated or likely to produce death or great bodily harm, and that the taking was "by use of force or intimidation." See LSA-R.S. 14:2(3); 14:64. Further, since use of a dangerous weapon is an essential element of the offense of armed robbery, LSA-R.S. 14:64, we find the probative value of the evidence clearly outweighed any prejudicial effect the evidence might have had.
These assignments of error are without merit.

ADMISSIBILITY OF EVIDENCE DERIVED FROM WARRANTLESS ARREST

Assignments of Error Numbers 1, 2, 4, 18, 20, 21, 24
Defendant asserts his arrest was unlawful because it was warrantless, without exigent circumstances, and not based on probable cause. He argues, therefore, that the evidence derived from or tainted by this illegal arrest, specifically, his confession and the oak stick, were not admissible at trial.[3]
The state argues that defendant's arrest was legal because it was based on probable cause, and no warrant was necessary. In support of this contention the state presented the testimony of two of the arresting officers, Bud Connor of the East Baton Rouge Parish Sheriff's Office, and William Denicola of the Baton Rouge City Police Department, Metro Division. They testified evidence was received from Burleigh Mallet on February 22, 1983, connecting defendant with the instant offense and a separate armed robbery which established the probable cause for his arrest in his home on the morning of February 23, 1983. On appeal, the state relies upon the provisions of La.C.Cr.P. art. 213 to justify defendant's arrest.
La.C.Cr.P. art. 213 provides, in pertinent part, as follows:
A peace officer may, without a warrant, arrest a person when:
* * * * * *
(3) The peace officer has reasonable cause to believe that the person to be *884 arrested has committed an offense, although not in the presence of the officer;...
In State v. Ranker, 343 So.2d 189 (La. 1977), the Louisiana Supreme Court noted problems inherent in the application of this article. Before determining the issue on established legal principles, the court first considered the issue of the constitutionality of warrantless arrests:
A troublesome question presented by this case is whether the police, in non-exigent circumstances, are required to obtain a warrant before acting, not only in case of entry of a dwelling to search for property, but also in case of entry to arrest a suspect.
Louisiana Code of Criminal Procedure Article 213(3) purports to authorize warrantless arrests whenever the officer has reasonable cause to believe the person to be arrested has committed an offense. We have grave doubts whether the provision may be constitutionally applied where an officer, although having probable cause to arrest, makes an unauthorized entry of a dwelling to effect the arrest under non-exigent circumstances. Our doubts are premised on the proscriptions against unreasonable searches and seizures contained in Article I, § 5 of the Louisiana Constitution (1974), and the Fourth Amendment to the United States Constitution.
Article I, § 5 of the 1974 Louisiana Constitution provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
An application of this language to the facts of the instant case would appear to have required the issuance of a warrant before the search, seizure and invasion of privacy.
The Fourth Amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
343 So.2d at 190-191.
At that time, the United States Supreme Court had not yet resolved the issue of whether the Fourth Amendment requires a warrant for non-exigent arrests within the home. In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Court squarely held that the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. 100 S.Ct. at 1374-1375. In State v. Brown, 387 So.2d 567 (La.1980), the Louisiana Supreme Court adopted Payton, and held Article I, § 5 of the Louisiana Constitution of 1974 also prohibits warrantless, non-exigent arrests in the home of the suspect.
The Second Circuit Court of Appeal recently held that State v. Brown, supra, is no broader than Payton and furnishes no additional requirements in this jurisdiction. See State v. Fuller, 446 So.2d 799 (La.App. 2nd Cir.1984), writ denied, 447 So.2d 1079 (La.1984), in which the court noted:
... [W]hile Payton requires that police must have an arrest warrant under these circumstances, consent has long been a recognized exception to those circumstances where a search warrant is required. See State v. Dowling, 387 So.2d 1165 (La.1980), and State v. Jolla, 384 So.2d 370 (La.1980). Both arrest and search warrants are progeny of the *885 Fourth and Fourteenth Amendments of the United States Constitution and are generally governed by the same rules. Therefore, a consensual entry to effect an arrest does not violate Payton.

446 So.2d at 801.
Although the record reflects that the main issue framed by defendant at the hearing on the motion to suppress concerned the presence or absence of probable cause to effect his arrest, the testimony of Detective Paul Frank Maranto and Detective Denicola established the officers were invited into defendant's home by a woman they presumed to be his mother. Both men testified the entrance was consensual, not forcible, and that no weapons were drawn. The question then becomes whether this particular woman could properly give consent to enter this dwelling. On the authority of United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the federal Eighth Circuit has held that, in warrantless, at-home arrest cases, "a third party may give consent as long as that third party had `common authority' over the premises." United States v. Briley, 726 F.2d 1301, 1304 (8th Cir.1984); accord United States v. Purham, 725 F.2d 450 (8th Cir.1984). Our examination of the record indicates that this was the defendant's family home, an area over which the mother certainly had "common authority." After they were validly admitted, the officers could properly arrest defendant with probable cause. Vizbaras v. Prieber, 761 F.2d 1013, 1017 (4th Cir.1985), cert. denied, ___ U.S.___, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986).
Despite evidence to the contrary presented by defendant's brother, we find the record reflects the entry into this home by police officers was based on consent and, therefore, authorized as a valid exception to the warrant requirement. See State v. Fuller, supra. Defendant's confession and the statements in which he furnished information for the search warrant of Thompson's car are not excludable on this basis.
Defendant also submits his arrest was unlawful because it was made without probable cause. Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Raheem, 464 So.2d 293 (La.1985).
Detective Denicola testified that defendant was arrested initially on information provided by Mallet that defendant committed an armed robbery at the Cedar Rose Lounge, although the officers were aware from information derived from other sources at the time of the arrest, that defendant had also been involved in the incident with Joseph Shaw. Irrespective of the source of the information connecting defendant with the Shaw incident, Mallet's confession alone supplied ample probable cause to justify defendant's arrest for the robbery at the Cedar Rose Lounge.
This assignment of error has no merit.

DENIAL OF RIGHT TO SPEEDY TRIAL

Assignment of Error Number 31
By this assignment of error, defendant argues the trial court erred when it denied his motion to quash the bill of information based on the violation of his right to a speedy trial.
The bill of information charging defendant with the offense of armed robbery was filed July 5, 1983. Thereafter, two trial dates, October 11 and December 12, 1983, were upset due to trials already in progress.
On February 17, 1984, defendant filed a motion to be relieved of counsel and a hearing was set for March 29, 1984. A *886 trial date of February 29, 1984, which had been set during the pendency of this motion, was also upset. The minute entries for this court appearance reflect that the postponement was due to a trial in progress and does not reflect the obvious difficulties inherent with proceeding to trial before this motion was acted upon. On March 28, 1984, the court granted defendant's motion and removed the Office of the Public Defender from further representation. New counsel was appointed on that date.
The trial was rescheduled for May 29, 1984. On that date, defendant requested a continuance which was granted over the state's objection. A status conference was arranged for approximately three months later and at that time the trial was rescheduled for November 5, 1984. On that date, the state, over defendant's objection, requested and received another continuance. Defendant was not present in court.
Thereafter, on February 20, 1985, defendant filed a second motion, requesting that present counsel be removed and another attorney appointed to represent him. A hearing was set on this motion. While it was pending, defendant filed a motion for a speedy trial and a motion to quash the information based upon the expiration of the time limits for prosecution. On April 12, 1985, the court denied defendant's motion to quash and granted the motion for a speedy trial. Trial was begun five days later on April 17, 1985.
Although defendant was arrested February 23, 1983, the time limits for the institution of prosecution began July 5, 1983, with the filing of the bill of information. La.C.Cr.P. art. 934(7). Exclusive of periods during which the running of the time limits to prosecute were suspended, the state was required to bring defendant to trial no later than July 5, 1985. See La.C.Cr.P. arts. 578; 580. Defendant's trial was begun more than two months before the time limits would have expired. The motion to quash was clearly premature, and the trial court did not err in denying it.
Defendant also argues his right to a speedy trial was denied. The right to a speedy trial is a fundamental right guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI; La. CONST. of 1974, art. 1, § 16; State ex rel. Miller v. Craft, 337 So.2d 1191 (La.1976). The four factors to be considered in determining whether a defendant has been deprived of a speedy trial are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Baker, 452 So.2d 737 (La.App. 1st Cir.1984).
The initial inquiry is into the length of the delay, and if the length was such as to be presumptively prejudicial, a further inquiry into the other factors is necessary. Whether the length is presumptively prejudicial depends on the peculiar circumstances of each case. State v. Reaves, 376 So.2d 136 (La.1979).
As previously set forth, the length of delay in this instance is well within the prescriptive period and is not presumptively prejudicial. Likewise, an analysis of the other factors necessary to finding a denial of a right to a speedy trial does not provide defendant any relief.
Defendant's motions in which he sought to have other counsel appointed and his motion to quash account for a substantial portion of the delay. Since the time limits for the prosecution of this matter had not run, we need not consider whether these motions would have operated to suspend them under La.C.Cr.P. art. 580. In previous decisions in which this court and the Louisiana Supreme Court have determined that a motion to withdraw as counsel may not operate to suspend the time limitations, the court, in each case, has pointed out that the motion would not have delayed the trial. See State v. Cooper, 389 So.2d 1124 (La.1980); State v. Carr, 271 So.2d 871 (La.1973); State v. Garbo, 442 So.2d 685 (La.App. 1st Cir.1983).
The trial court explicitly felt that defendant was attempting to manipulate the system *887 to delay his trial, evidenced by the timing of his motion for a speedy trial while the motion for substitution of counsel was pending. Even if defendant's motion did not suspend the running of the time limitations, the delay was occasioned due to defendant's actions. Therefore, although portions of the twenty-one month delay are attributable to the state, we find sufficient causation by defendant to find the reasons for delay did not prejudice him.
The third factor to be considered is defendant's assertion of his right to a speedy trial. Once that right is asserted, the provisions of La.C.Cr.P. art. 701(D) become applicable and defendant must be tried within one hundred twenty days if he is in custody.
Defendant did not file a motion for a speedy trial until March 12, 1985, and trial was begun approximately one month later. Further, although defendant now argues his right to a speedy trial was abridged, during the hearing on the motion to permit his counsel to withdraw, defendant personally denied that he filed the motion and indicated that he did not want a speedy trial.
The final factor to be considered is the prejudice defendant suffered because of the delay in instituting trial. Although defendant was incarcerated from February 23, 1983, the date of his arrest, he asserts no prejudice which might have resulted from the delay and the record does not reflect any manner by which he might have been prejudiced.
Accordingly, we find no merit to defendant's claim of the denial of his right to a speedy trial.

DENIAL OF CONTINUANCE

Assignment of Error Number 28
By this assignment of error, defendant argues the trial court erred in denying his motion for a continuance which resulted in the ineffective assistance of his counsel.
As previously set forth, on February 20, 1985, the second attorney appointed to represent defendant filed a motion to be permitted to withdraw. The trial court conducted a combined hearing on this motion and defendant's motion for a speedy trial. The court denied counsel leave to withdraw and granted the motion for a speedy trial, setting a trial date in accordance therewith. Defense counsel immediately objected to the trial date and requested a continuance, advising the court that he had not adequately prepared for trial because he felt that a plea would be arranged before the matter would be tried. The court noted all parties had previously been notified that no further continuances would be granted and restated its intention to proceed with trial three days later. Defendant now argues defense counsel was reasonably led to believe a plea bargain agreement had been finalized and that he was misled into believing the matter would not go to trial.[4]
Initially, we note that defendant's oral motion for a continuance is not in compliance with La.C.Cr.P. art. 707, which provides as follows:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
An oral motion for continuance presents nothing for review upon appeal. State v. Western, 355 So.2d 1314 (La.1978); State v. Buckenburger, 428 So.2d 966 (La. App. 1st Cir.1983). We are aware that this *888 rule may be disregarded whenever the circumstances arise unexpectedly and defense counsel has no opportunity to prepare a written motion. See State v. Parsley, 369 So.2d 1292 (La.1979). However, we find the present situation one in which the standard rule should be applied.
Defendant filed a motion for a speedy trial and it was granted in accordance with his request. Although defense counsel claimed that he was not prepared for trial, he did not withdraw the motion. The trial date had been set six weeks earlier on February 27, 1985, and defense counsel had previously been notified that no further continuances would be granted. Accordingly, we hold this situation does not warrant a finding that counsel was surprised by unexpected circumstances. Moreover, we note that the facts set forth above were the same factors considered by the trial court in denying defendant's motion. The trial court's ruling on a motion for a continuance is accorded wide discretion, State v. Buckenburger, supra, and we note no abuse of that discretion.
Finally, we note that defendant's allegations of ineffective assistance of counsel are without merit. Defendant does not allege nor does the record reflect that counsel's representation was prejudiced by the denial of the continuance. He sets forth no manner in which trial counsel's performance might have been deficient. Failure to make a showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

RESTRICTION OF CROSS EXAMINATION

Assignments of Error Numbers 11 and 12
By these assignments of error, defendant argues the trial court erred by restricting his right of cross-examination. Before trial, defendant gave notice of his intent to call Kennedy Thompson as a witness. During the testimony of Lubertha Hickman, a state witness, defendant attempted to establish a foundation for that testimony by inquiring about his general reputation for honesty. The trial court sustained the state's objections to this line of questioning. Defendant now argues that LSA-R.S. 15:484, which prohibits testimony to establish the credibility of a witness until that credibility is attacked, must yield to defendant's constitutional right to make out a defense.
When called as a witness, Kennedy Thompson asserted his right against self-incrimination and refused to testify. At that point, defendant's objection obviously became moot.
Further, we disagree with defendant's assertion that LSA-R.S. 15:484 limits defendant's right to present a defense. This provision does not prohibit him from presenting the evidence, but merely limits its use to cases in which the issue of a witness' credibility is relevant. These assignments of error have no merit.

EXCESSIVE SENTENCE

Assignment of Error Number 25
Defendant submits the trial court erred in imposing the maximum sentence of ninety-nine years without benefit of probation, parole or suspension of sentence as authorized by LSA-R.S. 14:64. He argues that the sentence imposed is not individualized to this defendant because the court based its sentence on the fact that defendant was involved in a murder, although the evidence was uncontradicted that defendant merely robbed the victim and Thompson was the actual murderer.
We find no merit to defendant's claim that the court's factual basis was incorrect. Defendant's confession established that he was, in fact, a principal to first degree murder. See LSA-R.S. 14:24. In the present case, it was quite reasonable for the trial court to comment on and consider defendant's assistance in planning and committing the attack upon the victim. See State v. Bethly, 449 So.2d 37 (La.App. *889 1st Cir.1984). While alone not determinative, such actions, taken together with the enumerated factors of La.C.Cr.P. art. 894.1, are relevant and may be considered in sentencing. See State v. Washington, 414 So.2d 313 (La.1982).
In imposing the sentence of ninety-nine years, the court noted that defendant, nineteen years old at the time of his arrest, had a previous conviction for aggravated assault and contempt of court, for which he had received a probated term, and a juvenile record commitment to L.T.I. which had been suspended.
Defendant argues that the court was incorrect in noting that he had not responded affirmatively to probationary treatment. The presentence investigation report ordered by the trial court indicates, however, that defendant began his adult criminal record prior to his release from juvenile probation. Defendant's probated term for conviction of aggravated assault began February 17, 1983, and terminated January 5, 1984. The instant offense was committed January 27, 1983, and he was arrested February 23, 1983. Although defendant's assertion that the probated term for aggravated assault was not terminated unsuccessfully is probably true, this was likely due, in part, to the strict supervision he received upon his arrest and continued incarceration for first degree murder and armed robbery one month after receiving the probated term.
Maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense and the worst kind of offender. State v. Jones, 398 So.2d 1049 (La.1981); State v. Leason, 477 So.2d 771 (La.App. 1st Cir. 1985). An armed robbery which results in the death of the victim is obviously the most serious possible violation. Despite defendant's assertions to the contrary, his record of offenses which began with aggravated assault and culminated with his arrest for first degree murder, categorizes him among the worst offenders. We find the sentence imposed well within the discretion of the trial court.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Defendant's argument that the stick was improperly admitted because no foundation connected it with the victim is without merit. The stick was originally used illustratively during the autopsy evidence and was shown to be the type weapon which was used. Before the stick was admitted into evidence, the state presented the testimony of Detective Bud Connor, who related that the stick was recovered from Kennedy Thompson's car pursuant to a search warrant obtained upon defendant's statement that the stick could be found in Thompson's car or house.
[2] Defendant does not argue that the statement was not admissible as a dying declaration because the prosecution was not for homicide.
[3] Defendant's motion to quash the information because of the illegal arrest is totally without merit. An illegal arrest does not in and of itself void a subsequent prosecution. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Brown, 395 So.2d 1301 (La. 1981).
[4] Although defendant urges on appeal that trial counsel reasonably believed a plea bargain had been finalized, in argument before that court counsel conceded that the agreement might not have been final. In any event, if defendant wishes to pursue his argument that a bargain was breached, he must do so in an application for post conviction relief. That claim, not assigned as error, is not properly before this court.