595 So.2d 820 (1992)
STATE of Louisiana, Appellee,
v.
Todd B. BASS, Appellant.
No. 23418-KA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
Writ Denied May 15, 1992.
*821 W. Charles Brown, Indigent Defender, Mansfield, for appellant.
Richard Ieyoub, Atty. Gen. and Don M. Burkett, Dist. Atty., for appellee.
Before MARVIN, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
Defendant, Todd Burton Bass, appeals from a conviction of first degree murder entered after a jury trial. Because the jury was unable to agree on a penalty, Bass was sentenced to life imprisonment. We deny the appeal and affirm defendant's conviction.
*822 The victim, Gerald Moberly, was defendant's parole officer. Bass, who was 21 years old, resided with his parents in Mansfield. On October 23, 1990 Moberly went to Bass's home to execute a misdemeanor arrest warrant from a neighboring parish. Gary Hobbs, a Mansfield police officer, accompanied Moberly. Bass was permitted to go into a bedroom to change clothes. While in the bedroom Bass shot Officer Moberly once in the right arm. The bullet went through the arm and into the chest where it lacerated major blood vessels and both lungs.
After Officer Moberly was shot, a gun fight erupted between defendant and the two officers. Defendant was wounded and fled the house after dropping his weapon. Officer Moberly recovered defendant's .22 caliber revolver and requested that Hobbs take him to the DeSoto General Hospital. Officer Moberly was air lifted from DeSoto General to Schumpert Memorial Hospital in Shreveport where he died.
Bass's claim of self-defense was rejected by the jury. On appeal defendant argues that the search and seizures following the shooting exceeded constitutional limits and that his statements after arrest were wrongly admitted into evidence.
Defendant's motion to suppress evidence seized following the shooting was based solely on the belief that Officer Moberly was effecting an unconstitutional arrest. All evidence presented by defendant at the hearing on the suppression motion related to the legitimacy of Officer Moberly's presence at defendant's residence.
A review, however, of the testimony at both the suppression hearing and trial is necessary to obtain a chronicle of the events leading to the seizures of evidence. Bass was on parole from a prior burglary conviction when Officer Moberly received notification that an arrest warrant for simple battery had been issued for Bass from the Natchitoches City Court. Initially Moberly had Bass telephoned by the police dispatcher and Bass agreed to come to the police station in Mansfield. Thereafter, a telephone call from Bass's mother was received requesting that Moberly come to the Bass residence. Moberly sought support from the Mansfield police department and Officer Hobbs agreed to assist. At approximately 9:15 p.m. the two officers arrived at the Bass home.
Moberly was met outside by defendant's mother who was upset over the pending arrest. The mother directed Moberly into the house and to the master bedroom where Bass was talking on the telephone. Bass was also unsettled over the arrest warrant and wanted to change clothes as he was dressed in insulated underwear. Bass went to his bedroom then returned to the master bedroom. After Bass requested privacy, Officer Hobbs waited in the hall with the mother. Moberly, however, stayed in the bedroom. Hobbs saw Moberly being shot and immediately took a defensive position. The house then exploded in gunfire with Bass, Hobbs and Moberly shooting. Bass was wounded, dropped his weapon and fled. Moberly took the fallen.22 caliber revolver and asked Hobbs to take him to the hospital. Mrs. Bass also was wounded and left the scene for medical treatment.
At least three patrol officers arrived on the scene and searched the house for defendant. Thereafter two detectives joined these officers and once more searched the house for defendant. No evidence was seized during these two intrusions.
According to police radio logs defendant was taken into custody at his uncle's home that night at 10:23 p.m. by Mansfield Police Chief Don English. After learning of the arrest, the two detectives then entered the Bass house for a crime scene search. They photographed the inside of the house, seized Moberly's handcuffs and nine empty casings that were ejected from Hobbs' 9 mm pistol. The search ended around midnight. The house was secured by the use of evidence tape.
The following day the detectives obtained a search warrant to reenter the Bass home. They videotaped the scene and recovered Moberly's .357 magnum revolver and its six fired shells. Spent bullets were also recovered but it is not clear whether *823 some or all were taken the night of the shooting or the following day.
The defense has the burden of asserting the basis for its motion to suppress. LSA-C.Cr.P. Art. 703 E. The state is entitled to adequate notice so that it will have an opportunity to present evidence and address the issue. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Johnson, 389 So.2d 372 (La. 1980); State v. Stokes, 511 So.2d 1317 (La. App.2d Cir.1987), writ denied, 516 So.2d 129 (1987). Defendant raised only the question of Officer Moberly's appearance at the Bass home as grounds to suppress all evidence seized after the shooting. Defendant relied solely on Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), to suppress the evidence seized claiming that "a warrantless arrest of a person in his home is unconstitutional, illegal and invalid." No other grounds were presented or argued at the suppression hearing and at trial no objection was offered to the introduction of the seized evidence.
Officer Moberly received legitimate notification of the commission by defendant of a misdemeanor and obtained a copy of the arrest warrant from Natchitoches. The warrant for defendant's arrest was facially valid and issued by a neutral and detached city judge. Either the notification or the copy of the warrant established probable cause to take Bass into custody for violating the conditions of his parole. Under LSA-R.S. 15:574.8, this probable cause was more than sufficient to allow a parole officer to enter and search the home to accomplish the arrest. State v. Shrader, 593 So.2d 457 (La.App. 2d Cir.1992); State v. Epperson, 576 So.2d 96 (La.App. 2d Cir.1991). Further, the Payton arrest warrant requirement is not applicable to a search of a parolee's home for the purpose of arresting him for violating a condition of his parole. Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); U.S. v. Harper, 928 F.2d 894 (9th Cir.1991).
In addition, Officer Moberly received consent to enter the residence. The testimony of Mansfield Police radio dispatcher, Elaine Temple, showed that she called Bass at Officer Moberly's request and that Bass agreed to come to the police station. Thereafter, Bass's mother telephoned and said defendant had been sick and requested an officer come to their home. When Moberly and Hobbs arrived Mrs. Bass voluntarily took them inside to the bedroom. The actions of both mother and son clearly evidenced consent to enter the home which was never revoked. A consensual entry into a residence to effect an arrest does not violate Payton. State v. Fuller, 446 So.2d 799 (La.App.2d Cir.1984).
The Payton argument by the defense also lacks merit because the search and subsequent seizures of evidence was not because of the simple battery warrant issued out of Natchitoches but rather was part of a distinctly different homicide scene investigation. Once Officer Moberly was shot a new and more serious crime was committed. Why Officer Moberly was at defendant's home may bear on the jury's consideration of reasonableness of defendant's use of deadly force; however, once deadly force was involved the issue became the constitutional limitations of a crime scene investigation of defendant's home. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).
Because defendant did not object to the crime scene investigation pursuant to Mincey, supra, the state did not address this issue and the record was not fully developed. Further this issue has not been raised on appeal. We note, however, defendant's weapon was recovered in the shoot-out by Officer Moberly. Under Mincey Officer Moberly was correct in removing this weapon when he left the scene because it was in plain view. Its removal was necessary to prevent its further use and to preserve the evidence. Likewise under Mincey the patrol officers and detectives were correct to enter the residence in search of defendant and could have conducted *824 a protective investigation for victims, suspects and items of evidence in plain view. They could insure that evidence would not be lost, destroyed or removed. The day following the shooting a search warrant was issued by a neutral magistrate on probable cause. This search resulted in the recovery of Officer Moberly's weapon and the scene being videotaped.
The only possible objectionable intrusion was on the night of the shooting after defendant's arrest by the detectives. This search produced only photographs and the recovery of the handcuffs and Officer Hobbs' spent shells. If these items were erroneously admitted under Mincey, supra, it was harmless error. This evidence was cumulative and would have inevitably been recovered the next day. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The other relevant evidence properly admitted overwhelmingly supported the jury's verdict.
Bass also sought to suppress statements he made to police officers after his arrest while being transported to the hospital. He claims that due to blood loss he was weak, groggy and at least once had lapsed into unconsciousness. The testimony refutes defendant's contention and demonstrates that his remarks were unsolicited and made after two Miranda warnings by different officers.
Defendant fled to his uncle's house in Mansfield after the shooting. The uncle telephoned the police and stated that defendant was willing to surrender to Chief Don English. Chief English went to the uncle's home and arrested Bass. Chief English read Bass his Miranda rights and observed that Bass was wounded but alert, coherent and spoke normally. Deputies Anderson and Bounds transported Bass in a patrol car to the DeSoto General Hospital. In route to the hospital, Bass began talking but was interrupted by Deputy Anderson who once more read defendant his Miranda rights. Without solicitation by the deputies, defendant stated that the whole situation was "bullshit." He further stated that Officer Moberly had no right to be at his house, that Officer Moberly had no right to arrest him and that he had made up his mind that he was not going back to jail. A few minutes later as the men were approaching the hospital defendant appeared to lose consciousness. Both deputies who transported Bass to the hospital testified that while making these statements Bass was fully aware of what he was doing.
The circumstances and the weight of the evidence easily support the trial court's determination that the statements were made knowingly, intelligently and voluntarily. State v. McDowell, 427 So.2d 1346 (La.App. 2 Cir.1983). Further these statements were not given in response to police questioning. State v. Reed, 499 So.2d 132 (La.App.2d Cir.1986). The trial court's evaluation is entitled to great weight. This assignment is without merit.
In another assignment of error Bass asserts the inadmissibility of certified copies of the affidavit and arrest warrant from Natchitoches. The affidavit was hearsay evidence; however, its admission was harmless error because it presented no information that was not contained within the arrest warrant. Therefore it was merely cumulative. State v. Edwards, 569 So.2d 597 (La.App. 2d Cir.1990), writ denied, 576 So.2d 29 (1990). The defense caused the existence of the arrest warrant to be relevant when in its opening statement and later in cross-examination defense counsel alleged that Officer Moberly had no warrant.
The original warrant was issued by the Natchitoches City Court and filed, after Bass's arrest, in the Tenth Judicial District Court for DeSoto Parish. At trial it was certified by the clerk of the Tenth Judicial District Court and identified by a deputy clerk. Thus the documents were sufficiently authenticated. LSA-C.E. Art. 901. There is no merit to this assignment of error.
Defendant's final assignment claims error when, during trial, the court granted the prosecutor's motion to reenter the Bass home to examine a part of the wall in the *825 master bedroom. During the presentation of the defense, Richard Turner, a private investigator from Shreveport testified that a hole in the master bedroom wall was made by a bullet probably fired by a .357 magnum revolver. Turner was labeled a defense expert and his testimony was offered to support the theory that Officer Moberly fired first. Although claiming to have spent 18 hours at the Bass house, Turner did not remove the wall panel to recover the alleged spend bullet and confirm his opinion because it would have "virtually destroyed the home." At the conclusion of Turner's testimony the prosecution sought authorization from the court to remove the panel of sheetrock and search for this alleged bullet. Even though the recovery of this bullet would have benefited the defense case, the defense strongly opposed the state's request.
The court permitted the state to conduct the search. The state's expert, Ray Herd, in the presence of Turner and defense counsel, found that the hole was caused by a molly bolt. To lessen the impact of this finding, the defense recalled Turner before it rested its case and he conceded his mistake. Thus, the state's rebuttal was no longer necessary.
The state has the right to rebut the evidence adduced by defendant. In a criminal prosecution the state does not necessarily know what evidence the defendant will use until it is presented at trial. In this case the state was not notified of the opinion of Turner in discovery. It is for this reason that the prosecution is given the right of rebuttal. State v. Monroe, 205 La. 285, 17 So.2d 331 (1944). The state is entitled to present evidence in rebuttal when new facts are put in evidence by the defendant. State v. Williams, 445 So.2d 1171 (La.1984). Control of evidence presented by the state on rebuttal is within the sound discretion of the trial court and will not be disturbed except in extreme cases such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage. Williams, supra.
The state requested to search defendant's home to seize evidence that would enable it to rebut defendant's allegations. The motion was granted but the evidence was not used because the defense conceded its mistake. The request by the State was appropriate as its results would easily prove or disprove the correctness of Turner's opinion. The examination suggested by the state could have and should have been conducted by the defense in the first instance. Turner's opinion was wrong and the court was right to allow this search. This assignment of error has no merit.

DECREE
Defendant's conviction is AFFIRMED.