511 So.2d 1317 (1987)
STATE of Louisiana, Appellant,
v.
Daniel Shaw STOKES, Jr., Appellee.
No. 18992-KW.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
*1318 Jack & Hudsmith, Shreveport by Rebecca L. Hudsmith and Jack R. Gamble, Mansfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Don M. Burkett, Dist. Atty., Robert E. Burgess, Asst. Dist. Atty., Mansfield, for appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
The state of Louisiana applied for a writ of review herein, which we granted. In that application, the state complained of the ruling by the trial court on a motion to suppress. That ruling suppressed certain evidence seized during a search pursuant to a search warrant and also suppressed statements given by the defendant at the search scene. Upon review, we determine that the evidence was legally seized and that the statements are not inadmissible as being the fruit of a "poisonous tree." We reverse the trial court ruling on the exception and remand for further proceedings.

FACTS
The defendant, Daniel Shaw Stokes, was charged with cultivation of marijuana under LSA-R.S. 40:966 A. This charge arose from the seizure, under a warrant, of approximately 21 live marijuana plants found growing in potting soil under wire enclosures *1319 on a 160-acre tract owned by the defendant's mother, Sara Stokes. The officers executing the warrant photographed the defendant while he was looking at the growing marijuana plants. The defendant moved to suppress the marijuana plants and photographs, as well as certain inculpatory statements made by the defendant immediately after his arrest on this charge. The motion to suppress was conducted contemporaneously with a preliminary examination.
The trial court concluded that the warrant was inadequate because the information contained in the affidavit was insufficient to warrant a finding of probable cause to issue the search warrant. The trial court further found that the "good faith" exception as per United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not apply to save this warrant. Thus, the trial court suppressed all the physical evidence seized under the warrant. The trial court also found that the state of Louisiana had failed to make any showing of an attenuation of the taint arising from the illegality of the search, or any showing of the waiver of Miranda rights, prior to the statements which the defendant gave. Therefore, the trial court ordered the statements suppressed as well.
In the instant case, the growing marijuana was located by three DeSoto Parish sheriff deputies on a 160-acre tract of land near a pond in the vicinity of a fork in an old logging road. Apparently, a residence is in the general vicinity. Officer Robert Davidson, who was in charge of the investigation, testified that he had flown over the property and "noticed a house in that area where there's a pond fairly close by." Officer Davidson testified that he saw the marijuana described in the affidavit near the intersection where the roads fork near the pond. He testified further that he did not see the house the day of the seizure and thus did not know exactly how far the house was from the pond. Thus, the import of his testimony is that he only saw the house by plane.
In addition, Lt. Davidson agreed in response to the assistant district attorney's question that the location "is kind of .. the fence line .. a lot of trees on it with just a bare opening that you can barely see." He also agreed "there's a pasture there to start with." The record also indicates that at some point prior to the execution of the warrant the defendant was observed entering the property upon which the marijuana patch was located through a locked gate.
Attached to the search warrant, which was admitted into evidence, were photocopies of an assessor's map of the area and an aerial photograph of the area. These items are only marginally helpful in identifying the area to be searched and are of no assistance in determining the location of the marijuana with respect to the residence.
Davidson testified that he had not been on the property prior to the execution of the warrant but that he and Lt. Frazier had placed the entrance to the property under surveillance on four occasions over a period of ten days to two weeks prior to the search. He stated that the surveillance was during afternoon working hours and that on two of those occasions, several days apart, the defendant was seen entering the premises alone.

OPEN FIELDS
The Louisiana Constitution of 1974, Art. 1, § 5[1] and the Fourth Amendment to the Constitution of the United States[2] prohibit unreasonable searches.
*1320 Of course, the area searched was the property of the defendant's mother. The defendant has no standing to object on United States constitutional grounds. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The Louisiana constitution's statement that "any person adversely affected by a search and seizure ... shall have standing" may entitle this defendant to object to the seizure of the incriminating evidence on state constitutional grounds. State v. Roach, 338 So.2d 621 (La.1976).
However, we pretermit the difficult issue of standing because we are able to readily determine that the property seized was in an open field where no expectation of privacy exists. In Oliver v. United States, 466 U.S. 170,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the United States Supreme Court reaffirmed the long standing proposition announced in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), that the Fourth Amendment protections the citizens enjoy in their "persons, houses, papers, and effects" are not applicable to open fields. The Oliver court pointed out that it was reaffirming the idea "that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." The court specifically noted that there was no societal interest in protecting the privacy of activities such as cultivation of crops from government interference or surveillance.
Very recently in United States v. Dunn, ___ U.S. ___, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), in determining that an area between the defendant's house and barn was not part of the curtilage, the United States Supreme Court spoke in more detail on the methodology to be used to determine if an area was curtilage and thus protected:
[The] curtilage question should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.
The Dunn court pointed out that the utility of these combined factors was not to produce a finely-tuned formula but rather to be used as a simple analytical tool to determine whether the area is "so intimately tied to the home itself that it should be placed under the home's `umbrella' of Fourth Amendment protection."
In the instant case, the evidence consisted solely of the testimony of Lt. Robert Davidson of the DeSoto Parish Sheriff's Office.[3] While the factual data elicited from Lt. Davidson concerning the nature of the property does not specifically address the four factors of United States v. Dunn, and is perhaps skimpy in some respects thereto, it is clear from an overall analysis that the property searched is not "intimately tied to the home itself"and is thus not protected as curtilage. The area is obviously not located immediately adjacent to the residence.[4] The area is obviously not within an enclosure surrounding the house and appears to be in a fairly wooded area having access from a nearby old logging road.
We therefore determine that under these circumstances the open fields doctrine applies and thus no search warrant was necessary to search and seize the marijuana plants and attendant photographs. *1321 This determination makes unnecessary our review of the trial court's dissatisfaction with the affidavit supporting the instant warrant,[5] and the trial court's finding of sufficient bad faith to abrogate United States v. Leon, supra.[6]

SUPPRESSION OF THE STATEMENT
The trial court also suppressed statements given by the defendant at the marijuana patch as being fruit of a poisonous tree under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The court additionally suppressed the statements because the record was virtually silent on the issue of whether the defendant made a knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel, thus determining that the state did not satisfy its burden in that regard.
The defendant's motion to suppress[7] moved to suppress all evidence seized as a result of the execution of the warrant including "oral evidence," specifically alleging that evidence to be the fruit of a poisonous tree. There are no allegations that any statement was not given freely and voluntarily or that it was in violation of Miranda.
At the beginning of the hearing on the motion to suppress there was no discussion by the court concerning the scope of the hearing to be held.[8] Further, there was no comment from the state or the defense to the effect that the scope of the hearing would exceed the allegations contained in the motion to suppress as filed.
It should be noted that the only information in the record concerning the circumstances surrounding the giving of the statements was that elicited by defense counsel on cross examination of the principal affiant, Lt. Davidson. Counsel asked him about a conversation he had with the defendant concerning the names of the other people who might be involved with the growing of the subject marijuana. He responded *1322 that he had been given two names of others who were aware of the existence of the marijuana plants at issue and that he asked the defendant if the "patch was his and probably two other individuals." Davidson testified that after he told their names to the defendant, the defendant replied that they did not "know anything about this."[9] Davidson had testified earlier under direct examination that the defendant was arrested immediately upon being contacted by arresting officers and given his Miranda rights at that time.[10]
Thus, the circumstances surrounding the defense's challenge of the statements are these: The defense filed a joint motion for a preliminary examination and a motion to suppress. The motion to suppress only challenged the statements as being the fruit of an illegally conducted search. At the beginning of the hearing on the motion, the court obtained an agreement that the motion to suppress and the preliminary examination would be conducted simultaneously. Thus, the state took the lead even though the defense had the burden of proof on the motion to suppress. The state presented only one witness and the defense presented no evidence. At the conclusion of the evidence, the defense additionally challenged the giving of the statements in oral argument for the first time on the basis that the state did not prove that any statements given were given freely and voluntarily after Miranda warnings.
Under these circumstances, we determine that the question of whether the statement was freely and voluntarily given and in accordance with the defendant's Miranda warnings was never before the trial court. The defense has the burden of asserting the basis of its motion to suppress. LSA-C.Cr.P. Art. 703 E. The state is entitled to basic notice of the basis of the defense's contentions in order that it may have an opportunity to properly present its case.
We emphasize that the burden is on the defense to allege what it seeks to suppress and why. There is no other way for search and seizure issues to be appropriately joined, particularly such as here where the defense has the burden of proof. In the instant case, the defense only alleged that the statements were the fruit of a poisonous tree. Thus, the state cannot be fairly expected to be on notice that the defendant has challenged the voluntariness of the statement and/or the Miranda warnings.
We observe that it seems in the best interest of both the defense and the state to be certain that the court is fully apprised of the subject matter of the motion to suppress before that motion commences. Moreover, if the trial court is uncertain as to the subject matter of the motion, it seems appropriate that the court address that point.
In summary, the statements were not the fruit of a poisonous tree. We also determine that issue had not been joined in this cause on the question of whether the statements at issue were freely and voluntarily given and whether Miranda rights, if appropriate, were rendered. Any ruling in that regard was premature.

CONCLUSION
In conclusion, we determine that the contraband seized (and the pictures thereof) *1323 falls within the purview of the open fields doctrine and its use was erroneously suppressed. Thus, any statements rendered at the scene were not the fruit of a poisonous tree. While the state does have an obligation to prove that any statement rendered was freely and voluntarily given and that Miranda rights were rendered, if appropriate, that issue was prematurely addressed by the trial court. The trial court ruling on the motion to suppress is therefore reversed and the cause is remanded for further proceedings.
REVERSED and REMANDED.
NOTES
[1] The Louisiana Constitution of 1974, Art. 1, § 5 reads as follows:

Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
[2] The Fourth Amendment to the Constitution of the United States reads as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[3] Apparently, the state took the lead because the motion to suppress was combined with a preliminary examination. Of course, the defense has the burden in a motion to suppress where there is a search warrant. LSA-C.Cr.P. Art. 703 D.
[4] Also, it is surely located more than the sixty yards from the house that the barn in United States v. Dunn was located.
[5] Initially, we note that staleness, which at first glance appears to be an issue, does not seem to affect the warrant due to the actions of the defendant observed under surveillance and the likelihood that property of this nature will still be present. See generally, State v. Thompson, 354 So.2d 513 (La.1978); State v. Gilbert, 354 So.2d 508 (La.1978); State v. Brawley, 347 So.2d 238 (La.1977). We note that the reliability information regarding the informant is skimpy, but information of a similar nature has been approved due to corroborating circumstances. See State v. Cook, 404 So.2d 1210 (La.1981); State v. Wichers, 392 So.2d 419 (La.1980). Additionally, while it is not clear whether the informant actually saw the plants, or was told of their existence by the defendant, even the latter circumstance is an admission against the defendant's penal interest carrying a significant indicia of reliability. (When asked by defense counsel if the confidential informant had stated that he had seen the marijuana or had simply been told of it, Lt. Davidson declined to answer because the response to that information might reveal the identity of the confidential informant. The trial court sustained the state's objection in this regard.) See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). These factors, coupled with the incriminating observations of the defendant while he was under surveillance, seem to satisfy the "totality of circumstances" analysis mandated by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), to the extent that the affidavit appears minimally sufficient.
[6] In this regard, the trial court found that while two officers signed the affidavit, only one officer actually received the information from the informant. The trial court also determined that the officers had "embellished" the truth to "bolster" the "shaky affidavit" by stating in the affidavit that the officers had observed the defendant visit the property on "several" occasions when in fact the evidence at the suppression hearing revealed that they had only witnessed two visits. This latter determination appears to hold the officers to a higher semantical standard than is appropriate. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); State v. Cook, 404 So.2d 1210 (La.1981). Likewise, the fact that two officers signed the affidavit does not appear to be a misrepresentation. Lt. Davidson was the only witness at the hearing, and while it does not appear from the evidence that the other affiant, Lt. Rives, was one of the surveilling parties, this fact is not certain. Since the defense had the burden to attack this warrant, the trial court concern in this area appears misplaced.
[7] This motion also contained a motion for a preliminary examination and discovery.
[8] However, the trial court did make a determination that a preliminary examination was to be carried out contemporaneously with the motion to suppress.
[9] The state's response to the defendant's motion for discovery, filed October 30, 1986, states that the defendant made statements to the arresting officers when he was approached at the marijuana patch that the defendant was looking for a trespasser. The response continues that when the defendant was told that the officers had a search warrant for the property that the defendant asked to see it. The defendant then asked if he could find out who the informant was. At that point, the officers responded that they had information that the patch was the defendant's and two other individuals and revealed their names to the defendant. The defendant then made a statement that the other two individuals did not know anything "about this."
[10] It seems the officers had the patch "staked out" on the date in question. The defendant arrived thereafter and the officers, unobserved by the defendant, photographed him observing the marijuana plants. Davidson testified the defendant overheard the clicking of the camera and discovered the officers. At that time, the officers approached the defendant, arrested him and read him his rights.