638 So.2d 452 (1994)
STATE of Louisiana
v.
Donahue SMITH.
No. 94-KA-120.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 1994.
*453 John M. Mamoulides, William C. Credo, III, Laurence P. Alterman, Dorothy A. Pendergast, Dist. Attys. Office, Gretna, for Plaintiff/Appellee, State of Louisiana.
Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for Defendant/Appellant, Donahue Smith.
Before BOWES, DUFRESNE and CANNELLA, JJ.
BOWES, Judge.
Defendant, Donahue Smith, appeals his conviction of second degree murder. We affirm.
The defendant was charged originally with the first degree murder of Dale Bonvillain under LSA-R.S. 14:30. At his arraignment, he pled not guilty.
On July 22, 1993, the court heard and denied defendant's motion to suppress his confession. Thereafter, defendant withdrew his former plea of not guilty and after being fully advised of his rights, entered a plea of guilty to the reduced charge of second degree murder under LSA-R.S. 14:30.1. Defendant entered his guilty plea pursuant to the provisions of State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the denial of his motion to suppress confession. After acceptance of the defendant's guilty plea, the judge sentenced him to the mandatory term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence affording him credit for time served. Defendant has appealed.

FACTS
In Smith's statement to the police, he claimed that he had been hired by one Malcolm Smith to collect fifteen thousand dollars ($15,000.00) that the victim owed Smith. Smith told defendant that he would pay him eighty-five thousand dollars ($85,000.00)[1] to collect this money and that if the victim did not have the money, then defendant's job would be to kill him. According to defendant, Malcolm Smith arranged to have someone gain the defendant's entry into the victim's apartment and also gave defendant a 12 gauge shotgun, a box of shells, and a Toyota Tercel for transportation.
After defendant gained entry into the apartment, defendant tried to get the money, but the victim said he did not have it. The two got into a fight, but defendant managed to overcome the victim and tie his hands with an extension cord. When defendant told him that he did not want to have to shoot him, the victim spit at him and rammed defendant with his head. Defendant claimed that, at that point, the first shot in the gun went off accidentally. However, defendant shot the victim three more times before fleeing the apartment. As he left, he grabbed the victim's car keys and (apparently took) the victim's automobile.

SUPPRESSION HEARING
The motion to suppress confession filed in the trial court alleges that defendant's confession and other inculpatory statements were inadmissible because they were not freely and voluntarily given, but rather were *454 made under the "influence of fear, duress, intimidation, threats, inducements and promises, and/or without mover having been advised of his right to remain silent, right to counsel, and all other Miranda warnings."
Defendant thereafter filed an amended motion to suppress, once again alleging that his confession and/or inculpatory statements were not freely and voluntarily given. In addition to asserting the same general allegations as in his original motion, he specifically asserted as follows:
The confessions/statements were the result of persistent and repeated interrogations over a three day period by Det. Thurman, Sgt. Pernia and Det. Wright, who are skillful law enforcement officers and these confessions/statements were elicited in the absence of counsel and without an intelligent knowing waiver of counsel. That said officers used tactics which intimidated, threatened and placed defendant in fear such as physically grabbing defendant and throwing him against the wall. The officers also threatened the defendant by telling him that Sheriff Harry Lee said that if the defendant, Donahue Smith, wanted to play hardball then to charge his brother with first degree murder. Officers promised defendant that if defendant told the police what the police wanted to hear, they would make sure that his brother would get out of jail.
At the suppression hearing, Detective Grey Thurman, a homicide investigator with the Jefferson Parish Sheriff's Office, testified that in November of 1991, he was assigned to investigate the death of Dale Bonvillain. During the course of his investigation, he had the opportunity to interview the defendant who, at that time, was under arrest for possession of stolen property and under investigation in regard to the murder. Defendant had been initially detained while driving in the victim's automobile, a description of which had been broadcast by the Sheriff's office.
Prior to interviewing defendant, Detective Thurman advised him of his rights and executed the standard Jefferson Parish Sheriff's Office rights of arrestee or suspect form with him on November 9, 1991 at 3:10 a.m. He read the rights to defendant verbatim from the form and then had defendant initial alongside each sentence of the rights form indicating that defendant understood those rights. During his conversations with defendant, Detective Thurman testified that he did not threaten, coerce, strike, or promise defendant anything in exchange for the statements. He further stated that the defendant, at no time, asked for an attorney to be present, nor did the defendant request that the questioning cease. He also testified that he took about four or five audio taped statements from defendant because the stories continued to change and there were some discrepancies, even within the same story.
In response to defense questioning, Detective Thurman testified that he initially took defendant into custody at the Brown Bomber Lounge in Gretna at 2:33 a.m. and then proceeded to the investigations bureau. Detective Thurman read defendant his rights at 3:10 a.m. and the first statement was taken at approximately 4:07 a.m. During that hour, the detective advised defendant of his rights; made sure he understood them; and then questioned him about how defendant had obtained the particular car he was in when stopped, because that car was owned by the victim of the murder. Although he informed defendant that he was in possession of a vehicle belonging to the victim of a murder, the detective did not threaten to charge defendant with first degree murder if he did not give a statement. Thurman then told defendant that he wanted to take a taped statement to go over the matters they just discussed. After taking that statement, Thurman left the room and did not take defendant's second taped statement until approximately two and one half hours later.
During that period, Thurman spoke with the officers who had interviewed the other occupants of the vehicle, to find out what they had learned.[2] Thurman also conducted *455 an interview with Court Smith, defendant's brother, and then returned to the interview room to speak with defendant. They again discussed the discrepancies in defendant's statement, as well as the discrepancies between his statements, and those of the other persons interviewed. Thurman testified that he did not threaten defendant during this further questioning.
The third statement occurred approximately three hours later. During this three hour time frame, Thurman again spoke to the other investigators to learn about any further developments in their interviews, filled out arrest reports, and planned a course of action to be taken. Detective Thurman admitted that he asked defendant to take a polygraph test during this period, but he denied making any threats to defendant about the test. After this recorded statement ended at about 10:55 a.m., defendant was transported to the correctional center. Thurman went to the correctional center the next day to get more information from defendant on "Darin," from whom defendant claimed to have gotten the car. This conversation was not recorded nor were there notes taken.
On November 11, Thurman brought the defendant to the detective bureau for further questioning at 8:15 a.m. Prior to this fourth recorded statement, which ended at 9:45 a.m., Thurman explained to defendant that they had looked for this person "Darin," but could not find him, nor could they find anyone who had ever heard of or seen him. In addition, computer checks revealed no one with a criminal history with that name. Detective Thurman also told defendant that there were some discrepancies in his own prior statements.
The fifth and final statement began at 1:00 p.m. on November 11. During that three hour session, the officers interviewed defendant's brother, Court Smith, who had changed his statement and now implicated his brother in the murder. Thereafter, the officer spoke to defendant, again explaining the discrepancies in his statements. Because defendant was concerned about his brother being charged with a crime he did not commit, defendant then said he would make a statement. After some discussion, defendant gave his final taped statement. The officer admitted that the defendant did not initiate any of these conversations, but rather that the conversations were all initiated by the detective.
After listening to this testimony, the court determined that the five statements were voluntarily given, without coercion or duress being placed on defendant.

ASSIGNMENT OF ERROR
Defendant contends on appeal that the trial judge erred in denying his motion to suppress. In his appellate brief, defendant specifically alleges that the state failed to show that there was probable cause for defendant's arrest and therefore defendant's confession should be suppressed because "[T]he illegal and baseless arrest hopelessly tainted appellant's confession."

ANALYSIS
At the outset, we note that neither the motion to suppress confession nor the evidence presented at the hearing of that motion raised allegations of an illegal arrest. Therefore, any question as to the illegality of defendant's arrest is not properly before this Court. In State v. Bass, 595 So.2d 820, 823 (La.App. 2 Cir.1992) writ denied, 598 So.2d 373 (La.1992), the court stated:
The defense has the burden of asserting the basis for its motion to suppress. LSA-C.Cr.P. art. 703 E. The state is entitled to adequate notice so that it will have an opportunity to present evidence and address the issue. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Johnson, 389 So.2d 372 (La.1980); State v. Stokes, 511 So.2d 1317 (La.App. 2d Cir. 1987), writ denied, 516 So.2d 129 (1987).
See also State v. Peters, 546 So.2d 829 (La. App. 1 Cir.1989) writ denied, 552 So.2d 378 (La.1989); State v. Stewart, 465 So.2d 206 (La.App. 3 Cir.1985) writ denied, 468 So.2d *456 571 (La.1985), and State v. Wright, 441 So.2d 1301 (La.App. 1 Cir.1983), where the respective courts concluded that defendants forfeited their right to pursue certain allegations on appeal by their failure to raise the claims in the pretrial motion to suppress or at the hearing on that motion.
In contrast is State v. Serrato, 424 So.2d 214 (La.1982), where the Louisiana Supreme Court held that defendant's failure to address a contention that his confession was the product of an illegal arrest and was procured in violation of his right to counsel in his pretrial motion did not preclude him from raising the issues on appeal. Serrato is distinguishable, however, because that defendant did not wait until his appeal to raise the two new grounds for his motion to suppress, but rather raised them in his motion for new trial. The Supreme Court stated:
However, since C.Cr.P. 703(D) has placed the burden of admitting both oral and written confessions on the state, this court can now properly review additional grounds to suppress fully argued later at trial on the merits or at a hearing on a motion for a new trial. In view of the fact that defendant in the instant case submitted two additional grounds to suppress in his motion for a new trial, they are properly before this court.

State v. Serrato, supra at p. 217.
Thus, the issue raised by defendant in his appellate brief, that of probable cause to arrest, is not properly before the court and we decline to address it further.
With regard to the voluntariness of the defendant's confession, the court stated in State v. Leeming, 612 So.2d 308 (La.App. 5 Cir.1992) writ denied, 616 So.2d 681 (La. 1993) as follows:
Before a confession can be introduced into evidence, the State has the burden of proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(D); LSA-R.S. 15:451; State v. Vaccaro, 411 So.2d 415 (La.1982). It must also be established that an accused who makes a confession during a custodial interrogation was first advised of his constitutional rights as per Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and voluntarily and intelligently waived those rights. State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
* * * * * *
The issue of whether a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. The trial judge must consider the "totality of the circumstances" in deciding whether the confession is admissible. State v. Shepherd, 449 So.2d 1120, 1123 (La.App. 5th Cir.1984). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession are entitled to great weight and will not be overturned on appeal unless they are not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Weiland, supra; State v. Delaune, 572 So.2d 652 (La.App. 5th Cir.1990). (footnote omitted).

State v. Leeming, supra at pp. 311-312.
Whether or not a showing of voluntariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La.1983). The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La.App. 1 Cir. 1983).

State v. Medine, 623 So.2d 110 (La.App. 1 Cir.1993).
In the present case, Detective Thurman testified that prior to interviewing defendant, he advised him of his rights and executed a standard Jefferson Parish rights of arrestee/suspect form with him. According to Detective Thurman, defendant appeared to understand his rights and placed his initials next to each statement of rights on the form indicating he had read the rights *457 and understood them. The officer further testified that at no time did he threaten, coerce, or promise defendant anything in exchange for his statement. Additionally, defendant at no time during the questioning requested the presence of an attorney.
Based on the officer's testimony, which was the only testimony given at the hearing, we agree with the trial court that the confession was free and voluntary, and made pursuant to a valid and voluntary waiver of Miranda rights by the defendant.
This assignment of error is without merit.

PATENT ERROR
We have reviewed the case for patent error in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Orgeron, 620 So.2d 312 (La.App. 5 Cir.1993) and we find none.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] These were the sums that defendant gave in the statement.
[2] There were apparently other occupants in the vehicle with defendant at the time it was stopped. It appears that they were also brought to the investigations bureau for questioning; however, there were no details adduced at the suppression hearing about the other occupants, other than brief mention about the statement of the defendant's brother's.