795 So.2d 477 (2001)
STATE of Louisiana
v.
Keith L. RICHARDSON.
No. 00-KA-1551.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 2001.
*478 Bertha M. Hillman, Louisiana Appellate Project, Thibodaux, LA, Attorney for Appellant/Defendant, Keith L. Richardson.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Counsel of Record on Appeal, Terry M. Boudreaux, Appellate Counsel, Kia M. Habisreitinger, Trial Counsel, Jon M. Maestri, Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD and JAMES C. GULOTTA, Pro Tempore.
JAMES L. CANNELLA, Judge.
Defendant, Keith Richardson, appeals from his conviction by guilty plea to one count of racketeering, in violation of La. R.S. 15:1353, and possession of cocaine between 28 and 200 grams, in violation of La.R.S. 40:967F. We affirm and remand.
On October 14, 1998, the Jefferson Parish District Attorney's Office filed a bill of information charging 11 Defendants, including Rene J. Decay (Decay), the defendant in a companion case,[1] with racketeering concerning narcotics activity, in violation of La.R.S. 15:1353. The Defendant *479 was added to this count in an amended bill of information on December 10, 1998. The amendment also added seven others to the racketeering charge. On December 16, 1998, the Defendant was arraigned and pled not guilty.
On February 11, 1999, the State amended the bill of information again to further charge the Defendant with one count of violating La.R.S. 40:967(F), possession of between 28 and 200 grams of cocaine, to which he pled not guilty.[2]
On March 18, 1999, the Defendant filed various pre-trial motions, including a motion to suppress confession, identification, and evidence. The trial judge held ten hearings on the various defendants' motions to suppress wiretap evidence.[3] On April 20, 2000, the trial judge, with written reasons, denied all motions to suppress.
On June 14, 2000, the Defendant withdrew his plea of not guilty and, reserving his right to appeal the denial of his suppression motion under State v. Crosby, 338 So.2d 584 (La.1976), pled guilty to one count of racketeering and one count of possession of between 28 and 200 grams of cocaine. He was sentenced to 15 years of imprisonment at hard labor on each count, to run concurrently.[4]
This case arises from an investigation of drug trafficking in Jefferson Parish conducted in early 1998 by the Federal Bureau of Investigation (FBI), the Drug Enforcement Agency (DEA), the Louisiana State Police (LSP), and the Jefferson Parish Sheriffs Office (JPSO). According to Special Agent Wade Barnes of the DEA, law enforcement officers learned during their ongoing investigation that a man named Terry England (England), who was not charged in the bill of information in this case, and others were trafficking cocaine in and around Jefferson Parish, Louisiana.
Through a wiretap on England's telephone, law enforcement officers learned that Decay was involved with England in cocaine trafficking in Jefferson Parish. After learning that Decay had three sources for cocaine besides the source that he and England used, the officers decided that Decay was a "viable target" for a wire intercept in an attempt to learn the identities of his three other sources for cocaine.
Based on information from the ongoing investigation, a federal magistrate authorized the initiation of a pen register[5] on Decay's home and cellular telephones. Law enforcement officers analyzed the telephone numbers reported by the pen registers and discovered a number of calls *480 to known narcotics distributors. Based on that information, Judge Clarence McManus of the 24th Judicial District Court signed three orders on May 28, 1998 authorizing wire intercepts, or wiretaps, to be initiated on Decay's home and cellular telephones and his digital pager.[6] The wiretap order authorized for 30 days from the date of the order, mandated that the law enforcement agents report the progress of their investigation every ten days.
Pursuant to that order, Agent Eric Pearson of the JPSO filed a report detailing the progress of the investigation relative to the telephone calls made to Decay's home telephone number intercepted through June 8, 1998. According to the report, law enforcement officers learned from the wiretap that Decay and the Defendant planned a drug transaction on June 1, 1998 at a Burger King restaurant on Lapalco Boulevard in Jefferson Parish. That evening, Agent Pearson and Sergeant John Ladd of the JPSO, with Special Agent Barnes, conducted surveillance of the drug transaction. The officers continued surveillance after the Defendant and Decay completed the transaction, resulting in a stop of the Defendant's car. The officers found four ounces of crack cocaine in plain view in his vehicle and arrested him.
According to the application for the sealing order of the wiretap audiotapes filed by the Jefferson Parish District Attorney's Office, law enforcement officers intercepted 24 audiotapes of communications on Decay's home telephone line between May 29, 1998 and June 8, 1998. On June 15, 1998, Judge McManus signed the order sealing the 24 audiotapes.
Agent Pearson testified in various hearings that the delay of approximately one week in presenting the box of tapes to Judge McManus for sealing occurred because the judge was out of town. At the March 26, 1999 hearing on the Defendants' motion to suppress, the State introduced the sealed box without objection from any of the defense Counsel representing the various defendants. Accordingly, the trial judge admitted into evidence the sealed box.[7] In her written denial of the motions to suppress, the trial judge stated:
Similarly, the recordings made via the intercept on the Decay home telephone and pager are not subject to suppression. At the conclusion of the intercept, the tapes were made available to Judge McManus and sealed pursuant to his directions. Judge McManus executed the sealing order and initialed the seals.
(Supp. R., p. 7).
On appeal, the Defendant asserts that the trial judge erred in denying his motion to suppress the evidence obtained from the wiretaps because they had not been sealed immediately, as required by La. R.S. 15:1310(F)(1), because they had not been sealed in the presence of the judge, as *481 required by La. R.S. 15:1310(F)(2), and because the State failed to prove that other investigative measures had been tried and failed, as required by La. R.S. 15:1310(A)(3). He also contends that the trial judge erred in conducting hearings in which the attorney for the Defendant was not present.

I] Violation of La. R.S. 15:1310(F) and R.S. 15:1310(A)(3)

In response to the first assignment of error, the State asserts that the trial court's ruling should not be disturbed because (A) the Defendant is procedurally barred from raising any irregularities in the timing of the wiretap seal because he did not argue that issue in the trial court; (B) the statute does not mandate sealing in the presence of a judge; and (C) the State presented adequate documentary evidence and testimony that "other investigative measures" had been used or would have been ineffective in this case.

A. Timing of the seal of the wiretap evidence under La. R.S. 15:1310F(1)
The Defendant contends that the trial judge erred in denying his motion to suppress the Decay wiretap evidence because the wiretaps were not timely sealed as required by La. R.S. 15:1310F(1). The State contends that the Defendant has not preserved this issue for review since he did not raise it in his motion to suppress or at any of the hearings on his motion to suppress.
Louisiana's Electronic Surveillance Act, La. R.S. 15:1310, provides the procedure which law enforcement officers must follow for lawful interception of wire or oral communications. La. R.S. 15:1310F(1) provides that:
The contents of any wire or oral communication intercepted by any means authorized by this Chapter shall be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this Subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recording shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of R.S. 15:1309(A) and (B) for investigations. The presence of the seal provided for by this Subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under R.S. 15:1309(C).
At the March 26, 1999 suppression hearing, Special Agent Barnes and Agent Pearson testified that the wiretap, authorized on May 28, 1998, was stopped on June 8, 1998 and the audiotape evidence of the wiretaps was sealed on June 15, 1998. Although sealed 7 days after the surveillance was ended, the authorization was in effect for 10 more days, or until June 28, 1998. At the suppression hearings, the Defendant did not question the law enforcement officers about the delay between the date the wiretap was stopped or the date the tapes were sealed, nor did he object when the State introduced the sealed box containing the Decay wiretap evidence. In fact, none of the Defendants objected to its introduction, nor did they argue, during the portion of the suppression hearings devoted to the Decay wiretaps, that the *482 audiotape evidence collected from the wiretap on Decay's home telephone was not timely sealed by the trial judge.[8] Furthermore, in his written motion to suppress, the Defendant failed to challenge the timely sealing of the evidence. He only argues that the evidence should be suppressed because it was seized without a valid warrant or a valid exception to the warrant requirement. This issue is presented for the first time in this Court.
In State v. Smith, 94-120 (La.App. 5th Cir.5/31/94), 638 So.2d 452, we declined to address the Defendant's argument regarding suppression of evidence, where he had failed to argue the issue in the trial court, noting:
The defense has the burden of asserting the basis for its motion to suppress. LSA-C.Cr.P. art. 703 E. The state is entitled to adequate notice so that it will have an opportunity to present evidence and address the issue. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Johnson, 389 So.2d 372 (La.1980); State v. Stokes, 511 So.2d 1317 (La.App. 2nd Cir.1987), writ denied, 516 So.2d 129 (1987).
Smith, 638 So.2d at 455-456.[9]
Nonetheless, we will briefly address the issue.
The Defendant and the State rely on United States v. Ojeda Rios, et al., 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990). However we find Ojeda Rios distinguishable.[10] That case holds that the federal statute which regulates the interception of wire communications requires the seal to be obtained immediately upon expiration of the underlying surveillance order to limit the government's opportunity to alter the recordings.[11] 495 U.S. at 263, 110 S.Ct. at 1849. Further, if there is a delay in sealing the recordings, the language of the statute requires that the government explain not only why a delay has occurred, but also why it is excusable. 495 U.S. at 265, 110 S.Ct. at 1850.
In Ojeda Rios, there had been several orders. The trial judge found that (1) there had been at least an 82-day delay in sealing the tapes obtained from the first suspect's old residence under the first order, since the second order was not an extension of the first, and (2) the sealing of the tapes concerning the other two suspects had been delayed 118 days after the February 17, 1985 expiration of the fifth order (regarding the public telephones near their residence), since the sixth order was not an extension of the fifth. The trial judge suppressed the first and fifth tapes on the basis of the delays. The United States Supreme Court did not overrule the finding, but remanded for a determination by the Second Circuit whether the government *483 advanced, in the trial court, a `satisfactory explanation' for the delay in sealing the recordings after the wiretap order had expired. 495 U.S. at 267, 110 S.Ct. at 1851.
Although Ojeda Rios stands as the United States Supreme Court's pronouncement on the issue of what constitutes immediate sealing of recordings after a wiretap order has expired, it does not apply in this case because the audiotape evidence was sealed before the wiretap order had expired.
In La. R.S. 15:1310F(1) of the Louisiana Electronic Surveillance Act, like the federal wiretap statute, specifies that, "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." (Emphasis added). In this case, law enforcement officers could have continued to record communications that occurred on the home telephone line (as well as the cellular telephone line and Decay's pager) until June 28, 1998, when the wiretap order expired. Although the wiretap was discontinued on June 8, 1998, the evidence was sealed on June 15, 1998, about two weeks before the wiretap order expired on June 28, 1998. Therefore, we find that the recordings were timely sealed under the specific language of La. R.S. 15:1310F(1).

B. Sealing in the presence of a judge as required by La. R.S. 15:1310F(2)
Second, the Defendant contends that the tapes were not sealed in the presence of a judge as required by the statute. The State responds that the statute requires only that the tapes be made available to a judge and sealed under his directions.
La. R.S. 15:1310F(2) provides:
Applications made and orders granted under this Chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge in whose district the interception of wire or oral communication took place and shall not be destroyed, except on order of the issuing or denying judge, and in any event shall be kept for ten years.
At the suppression hearing on March 26, 1999, Judge McManus testified about his general procedure when sealing evidence obtained from wiretaps. He did not testify specifically about Exhibit S-1M, the box at issue in this appeal. He did, however, testify that he did not usually see the tapes or inspect the tapes individually when he signed the sealing order. He indicated that the officer who brings the box to be sealed has generally already sealed the box before presenting the box and sealing order for his signature.
Agent Pearson testified that he gathered the recordings of the wiretap on Decay's home telephone line at the JPSO and brought the box to Judge McManus' office for sealing. He testified that, usually sheriff's office personnel do not seal the box containing recordings before presenting the box for sealing, but he could not remember whether he had sealed this specific box before presenting it to Judge McManus. He also indicated that this case was his first as a case agent.
Louisiana State Trooper John Fitzpatrick testified that he was present when the box of tapes from the Decay wire intercept was brought to Judge McManus for sealing. He testified that the judge signed the seal on the box as well as the sealing application and order. He was not asked whether the box of tapes was sealed before the judge signed the sealing order.
*484 In her written reasons for denying the suppression motion, the trial judge stated, "At the conclusion of the intercept, the tapes were made available to Judge McManus and sealed pursuant to his directions. Judge McManus executed the sealing order and initialed the seals." (Supp. R., p. 7).
In State v. Cain, 95-0054 (La.App. 4th Cir.2/27/96), 670 So.2d 515, a published writ disposition, the Fourth Circuit Court of Appeal noted that "sealing" has not been defined by the Electronic Surveillance Statute, but stated that:
In any event, `sealing' for purposes of the identical federal requirement has been described as the process wherein the government attorney obtains `a sealing order simply by presenting the appropriate papers and tapes to the supervising judge. Other than gathering the tapes, putting them in boxes and taking the tapes to the supervising judge, the record discloses no other necessary steps to sealing.' United States v. Carson, 969 F.2d 1480, 1489 (3rd Cir.1992). See also United States v. Quintero, 38 F.3d 1317, 1330 (3rd Cir.1994) ...
Id. at 523, n. 13.
Here, the officers testified that they presented the tapes to Judge McManus at his office, along with the sealing application and order. They also testified that he signed the application and order, as well as the seal on the box. While it was not clear from the record whether the box was sealed before it was brought to Judge McManus' chambers, we find that the statute does not require the judge ordering the seal to view each tape before the box is sealed, nor does it require that the box be unsealed before presenting to the judge. Id.
Based on the foregoing, we find that the trial judge correctly ruled that the tapes were not subject to suppression on the basis that the State failed to comply with the statute's sealing requirements.

C. Other investigative measures required by La. R.S. 15:1310A(3) and C(4)
Next, the Defendant contends that the State failed to establish that "other investigative procedures," including undercover agents, confidential informants, or surveillance, had been tried and had failed prior to seeking authority for the wiretap. He also argues that the Decay wiretap was not necessary because the State had sufficient information from the John Esteen (Esteen) wiretaps to infiltrate the Decay operation.
La. R.S. 15:1310A and A(3) states that:
A. Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge in whose district such interception of wire or oral communication shall take place and shall state the applicant's authority to make such application. Each application shall include the following information:
. . . .
(3) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous, or that such circumstances exist that without immediate action a human life may be endangered.
In addition, La. R.S. 15:1310C and C(4) provides:
C. Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the district in which the judge is sitting, if the judge determines *485 on the basis of the facts submitted by the applicant that:
(4) There is reason to believe that investigative procedures have been tried and failed or they reasonably appear to be unlikely to succeed if tried or to be dangerous, or that such circumstances exist that without immediate action a human life may be endangered.
In this case, the State introduced a copy of the affidavit in support of the application for the wire intercept authorization, which listed other investigative procedures available, but not practical in this case. The affiants included Louisiana State Trooper John Fitzpatrick, JPSO Agent Pearson, and DEA Special Agent Barnes.[12] The information in the affidavit tracks Agent Barnes' testimony at the suppression hearing on March 26, 1999.
Special Agent Barnes testified that pen registers would not have been as effective in this case because the registers only provide the name of the party being called, not the purpose for the call. He also testified that, while physical surveillance is useful, it does not provide details of the conversations or meetings of the target subject, and that Decay was highly suspicious so he employed "counter surveillance" techniques, which made him difficult to follow. Agent Pearson further noted, in his testimony at a later hearing on the Defendants' motion to suppress, that the agents did use physical surveillance in their investigation of the entire drug ring, but it became useful only after they obtained information from the wire intercept on Decay's home telephone line.
Agent Barnes testified that grand jury subpoenas would not have been useful in this investigation either, because the subjects would very likely invoke their Fifth Amendment privilege against self-incrimination, which would stall the investigation. He further explained that although confidential informants can provide very valuable information about the identity of co-conspirators and methods of drug trafficking, most confidential informants are not privy to every aspect of an organization, including where drugs are hidden, how drugs are imported into the area or how the drugs are distributed. Special Agent Barnes stated that search warrants can be very useful, but searching a subject's home will usually not reveal information regarding co-conspirators and other aspects of the investigation.
Special Agent Barnes further testified that undercover agents were not used in this investigation because they are not always able to infiltrate an organization to the extent necessary to understand every aspect of the organization. Although interviews of subjects are useful, they are limited in their scope, since one subject is usually knowledgeable about certain aspects of an organization, but may not have any information on other aspects of the organization.
The Defendant reiterates the arguments made in the trial court and which were rejected by the trial judge. The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. She found, and we agree, that the alternative methods were not practical and unlikely to succeed. Thus, the trial judge did not err in denying the Defendant's motion to suppress the evidence resulting from the Decay wiretaps.

*486 II] ABSENCE OF COUNSEL

In his second assignment of error, the Defendant argues that the trial judge erred in conducting three hearings on the motions to suppress in which his attorney was not present.[13] The State contends, initially, that this issue was not preserved for appeal since the Defendant did not reserve his right to review of this issue when he tendered his guilty plea under State v. Crosby. The State further contends that, in the event the panel evaluates the merits of the Defendant's argument, he fails to even argue, much less establish, that he was prejudiced by his attorney's absence from three hearings on the several Defendants' motions to suppress.
A guilty plea normally waives all non-jurisdictional defects in the proceedings prior to entry of the guilty plea, and precludes review of such defects either by appeal or post conviction relief. State v. King, 99-1348 (La.App. 5th Cir.5/17/00), 761 So.2d 791, 793, writ denied, 00-1824 (La.6/29/01), 794 So.2d 822, (citing State v. Davis, 97-850 (La.App. 5th Cir.2/11/98), 708 So.2d 1121). However, under Crosby, a defendant may be allowed appellate review, if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case.[14]Id.
In this case, at the guilty plea proceeding, the Defendant failed to specifically reserve his right under Crosby to appeal the fact that his attorney was not present at three of the suppression hearings. Although he preserved his right to appeal the denial of the motion to suppress on substantive grounds, his statement in the colloquy is not sufficient to preserve this issue on appeal, as it was never raised in the trial court. However, because of its potential constitutional effect, we will address it.
The Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution guarantee an accused the assistance of Counsel in all criminal prosecutions. The United States Supreme Court has instructed that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation." United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). The Court in Morrison went on to explain that:
Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the Defendant the effective assistance of Counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect *487 upon the effectiveness of Counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding....
Id. at 365, 101 S.Ct. at 668.
In the present case, the Defendant was represented by Counsel at six of the ten hearings on the motions to suppress. The record indicates that the Defendant's attorney was not present at the July 30, 1999, September 10, 1999, January 28, 2000 and the February 18, 2000 hearing. A review of the transcript of the hearings on the motions to suppress indicates that the hearings which were not attended by the Defendant's attorney focused on issues that did not impact the State's case against the Defendant. Thus, there was no prejudice to the Defendant.
At the July 30, 1999 hearing, the State presented testimony from Agent Pearson about the surveillance and other issues that led to the June 5, 1998 traffic stop of Decay and Esteen. Agent Pearson also testified about a subsequent application for a search warrant for Esteen's house and other issues surrounding his arrest. The State also called Trooper Steve Orgeron for information surrounding his traffic stop of Esteen. In addition, Trooper Schmidt testified during that hearing about the arrest of co-defendants' Robert Moore and Mitchell Goodman (Goodman). Trooper Schmidt also testified about the arrest of co-defendant Ashley Wallace (Wallace). Deputy David Roddy of the JPSO testified about a traffic stop which he conducted that preceded the arrest of co-defendant Goodman. The Defendant was not mentioned by the State or other defense Counsel at that hearing.
At the September 10, 1999 hearing, Trooper Joseph Hasselbeck testified about a traffic stop that he made that led to the arrest of co-defendant Joseph Harris. Trooper Hasselbeck also testified about the June 28, 1998 arrest of co-defendants Shandella Ables and Chad Arceneaux. At that same hearing, the State called Trooper Henry Thompson who testified about Wallace's arrest on June 27, 1998. Defense attorney Arthur Morrell was called by co-defendant Sonya McShane (McShane) regarding his conversation with her on the day of her arrest. The State, for its final witness at the suppression hearings, called Trooper First Class Timothy Bender to testify about his involvement in the traffic stop of Wallace, which occurred after officers conducting surveillance observed a drug transaction between Decay and McShane on June 27, 1998. Finally, because of a previous agreement, the trial judge allowed defense Counsel for Esteen to call Trooper Schmidt for cross-examination regarding the applications for the wire intercepts on Esteen's telephone line. Again, the Defendant was not mentioned in this hearing.
At the January 28, 2000 hearing, defense counsels began to present testimony in support of their motions to suppress. At that hearing, Counsel for co-defendant McShane presented two witnesses who testified about the procedures that they followed for monitoring the wire intercepts. Finally, at that hearing, Counsel for co-defendant Wayne Sanders (Sanders) called his sister-in-law and his wife to testify that he was not involved in the alleged conspiracy or any illegal activity. There was no reference to the Defendant during this hearing.
At the February 18, 2000 hearing, defense Counsel for Sanchez called one witness who testified about the procedures that the monitors followed when monitoring the wire intercepts. Defense Counsel for Sanders called Special Agent Barnes to question him about aspects of the investigation *488 that led to her client's arrest. Finally, the State recalled Trooper Schmidt to question him about the voluntariness of Esteen's statement to the police on the day he was arrested. Again, the Defendant was not mentioned.
Furthermore, it is noted that for these hearings, because there were 22 defendants charged in one bill of information, it was commonplace for defense attorneys to be absent when the witnesses that the State was presenting did not pertain to their clients.
Assuming arguendo, however, that the Defendant's Sixth Amendment right to Counsel was somehow violated by his attorney's absence during hearings on co-defendants' motions to suppress, the Defendant has not shown any adverse effects or prejudice he suffered because his attorney was not present, as required by Morrison, in order to be entitled to relief.
Thus, we find that the Defendant is not entitled to relief because the hearings did not pertain to his arrest, and he has not specified any prejudicial effects resulting from his attorney's absence.

ERROR PATENT
We have reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206.
La.C.Cr.P. art. 930.8 instructs the trial judge to inform a defendant at the time of sentencing of the prescriptive period for post-conviction relief. Here, the sentencing transcript reflects that the trial judge failed to accurately advise the Defendant of the time limitations that govern filing applications of post-conviction relief, as required by La.C.Cr.P. art. 930.8(C). Following imposition of the enhanced sentence, the trial judge told the Defendant, "he has ... two years from today's date to seek post-conviction relief."[15] (R., p. 1626). The correct period is two years after judgment of conviction and sentence become final. Therefore, we will remand the case with an order to the trial judge to correctly advise the Defendant by sending written notice to the Defendant within 10 days of the rendering of this opinion, and to file written proof in the record that Defendant received the notice. See: State v. George, 99-887 (La.App. 5th Cir.1/4/00), 751 So.2d 973, 975.
Accordingly, the Defendant's convictions and sentences are hereby affirmed. The case is remanded for the trial court to send written notice advising the Defendant of the provisions of La.C.Cr.P. 930.8 within 10 days of the rendering of this opinion and to file written proof in the record that the Defendant received said notice.
CONVICTIONS AND SENTENCES AFFIRMED, REMANDED.
NOTES
[1] In the original bill of information, Decay, along with four others, was also charged with being a felon in possession of a firearm, in violation of La.R.S. 14:95.1 and one count of possession of 400 or more grams of cocaine. On December 10, 1998, the bill of information was amended to add the Defendant herein to the list of defendants charged with racketeering. On February 11, 1999, the bill of information was amended a third time to add another count of possession of 400 or more grams of cocaine against Decay and two others, as well as several counts against other co-defendants. Because the Defendant herein and Decay's motions to suppress wiretap evidence were heard in the same hearings, this appeal and Decay's appeal are deemed companion cases on the docket.
[2] On February 11, 1999, the State added four more defendants to count one and several other counts against various other co-defendants.
[3] The hearings were held on March 26, 1999, April 21, 1999, May 14, 1999, May 28, 1999, July 16, 1999, July 30, 1999, September 10, 1999, October 21, 1999, January 28, 2000, and February 18, 2000.
[4] Although the Defendant's written motion for appeal filed on July 28, 2000 was untimely under La.C.Cr.P. art. 914, his appeal is still considered timely because, he conditioned his guilty plea on his right to appeal the trial court's ruling on his motion to suppress. A defendant's "statement on the record at the time of his guilty plea that his plea was conditioned upon his agreement with the district attorney to reserve the right to appeal the denial of the motion to suppress was sufficient to constitute an oral motion for appeal under C.Cr.P. art 914." State v. Bunnell, 508 So.2d 55, 55 (La.1987), appeal reinstated, 517 So.2d 439 (La.App. 1st Cir.1987); State v. Weiland, 556 So.2d 175, 177 (La.App. 5th Cir.1990).
[5] A pen register is a computer printout of telephone numbers which called or were called from the number being monitored.
[6] The issues raised by the Defendant only pertain to the wiretap on Decay's home telephone line. A review of the seven volume record and supplement reveals that there were at least two other wiretaps, which led to arrests of other defendants named in the racketeering count of the bill of information. However, because the issues raised here do not implicate those wiretaps, the details of those wiretaps are not discussed or addressed in this opinion.
[7] At the March 26, 1999 hearing on the motion to suppress the wiretap evidence, there was testimony from Judge McManus, Agent Pearson, State Trooper John Schmidt, and Assistant District Attorney Kia Habisreitinger about the integrity of the seal on another box of tapes marked for evidence as Exhibit S-4U. However, the integrity of the seal on Exhibit S-1M, the box of tapes of Decay's telephone which are at issue in this appeal, was not in question because the trial court noted that it was appropriately sealed.
[8] Regarding the Decay wiretap evidence, the several defendants argued, among other things, that each individual audiotape was not enclosed in either a plastic holder or envelope, that the proper law enforcement agent did not properly seal each tape, and that each tape should be sealed with red evidence tape.
[9] Quoting State v. Bass, 595 So.2d 820, 823 (La.App. 2nd Cir.1992) writ denied, 598 So.2d 373 (La.1992).
[10] The Defendant also quotes extensively from State v. Cain, 95-0054 (La.App. 4th Cir.2/27/96), 670 So.2d 515, 519-521. Cain is factually similar to Ojeda Rios. In Cain, the order expired and there was a delay of between 109 and 136 days in having the tapes judicially sealed. Id. at 522. Because the delay occurred after the wiretap authorization had expired, Cain, like Ojeda Rios, is distinguishable from this case.
[11] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq.
[12] Other affiants were Jefferson Parish District Attorney Paul Connick, Colonel W.R. Whittington of the LSP, and Assistant State Attorney General Timothy Screen.
[13] Although the Defendant claims on appeal that his trial counsel was not present at three of the suppression hearings, the record indicates that his trial counsel was not present at four of the suppression hearings: July 30, 1999, September 10, 1999, January 28, 2000, or February 18, 2000 hearings.
[14] At his guilty plea proceeding, the following exchange occurred:

MR. SOIGNET (DEFENSE COUNSEL):
Your Honor, at this time, we waive all delays for sentencing. I would want to clarify that part of the plea bargain was he was going to reserve his rights under Crosby to any pretrial decisions of the Court.
THE COURT:
All right. All right. Then you understand, sir, that I am giving you the opportunity to take any appeals regarding the Motion to Suppress that we have previously had in this case, and it depends on what happens with those. All right. At this time, I'm signing and dating, with today's date, indicating my acceptance of the guilty plea. (R., p. 1627).
[15] The commitment is silent regarding the La.C.Cr.P. art. 930.8 instruction.